No. 24-13660-P

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CAREY GRAYSON,

*Plaintiff-Appellant,*

v.

COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS, ET AL.,

*Defendants-Appellees.*

———————————————————————

On Appeal from the United States District Court
for the Middle District of Alabama
No. 2:24-cv-376-RAH-KFP (Hon. R. Austin Huffaker)

———————————————————————

**BRIEF OF APPELLANT**

———————————————————————

JOHN ANTHONY PALOMBI
SPENCER J. HAHN
ERIC BROWN
KACEY L. KEETON
MATT SCHULZ
FEDERAL DEFENDERS FOR THE
  MIDDLE DISTRICT OF ALABAMA
817 South Court Street
Montgomery, AL 36104
(334) 834-2099
John_Palombi@fd.org

*Counsel for Appellant*

**\*EXECUTION SET FOR NOVEMBER 21, 2024, AT 6 P.M. CENTRAL\***

*Grayson v. Commissioner, Ala. Dep't of Corr., et al.*
No. 24-13660-P

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record for Appellant Carey Dale Grayson, in compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, certify these listed persons and parties may have an interest in the outcome:

1.    Alvis, W. Barry – counsel for Mr. Grayson at trial;

2.    Armstrong, Honorable Robert R. - United States Magistrate Judge, Northern District of Alabama;

3.    Billingsley, Michael B. - counsel for the State of Alabama on direct appeal;

4.    Brown, Eric – counsel for Mr. Grayson in these proceedings;

5.    Brown, Roger – counsel for the State of Alabama at trial;

6.    Boudreaux, Scott – counsel for Mr. Grayson at trial;

7.    Cochran, Don - counsel for the State of Alabama at trial;

8.    Daniel, Tracey - counsel for the State of Alabama on direct appeal;

9.    DeBlieux, Vicki Lynn - victim;

10.    DeBlieux, Jan – victim's mother;

11.    Freeman, Christine A. - counsel for Mr. Grayson in federal habeas proceedings;

12.    Hahn, Spencer – counsel for Mr. Grayson in these proceedings;

13.    Hamm, John – Commissioner, Alabama Department of Corrections and a Defendant in these proceedings;

14.    Houts, James R. – counsel for the State of Alabama during state collateral

C-1 of 3

proceedings;

15. Hughes, Beth Jackson – counsel for the State of Alabama in state post-conviction and Defendants in these proceedings;

16. Keeton, Kacey Leigh – counsel for Mr. Grayson in these proceedings;

17. Marshall, Steven T. – Alabama Attorney General and counsel for the State of Alabama during these proceedings;

18. Mann, Lann - counsel for the State of Alabama on direct appeal during state collateral proceedings;

19. McCormick, Honorable Michael W.  - Jefferson County Circuit Court Judge, trial judge, and state collateral proceedings judge;

20. Palombi, John A. – counsel for Mr. Grayson in these proceedings;

21. Petersen, Michael - counsel for Mr. Grayson during state collateral proceedings and federal habeas proceedings;

22. Raybon, Terry –Warden of Holman Correctional Facility and a Respondent in these proceedings;

23. Proctor, Honorable David R. - United States District Judge, Northern District of Alabama;

24. Pryor, Honorable William - United States Appellate Judge, Eleventh Circuit Court of Appeals and former Attorney General for the State of Alabama and counsel for the State of Alabama on direct appeal;

*Grayson v. Commissioner, Ala. Dep't of Corr., et al.*
No. 24-13660-P

25.    Roberts, Jr., Jasper B. - counsel for Richard Allen in federal habeas proceedings;

26.    Schulz, Matt – counsel for Mr. Grayson in federal habeas proceedings and these proceedings;

27.    Smith, Leslie – counsel for Mr. Grayson during federal habeas proceedings;

28.    Vinson, Virgina A. – counsel for Mr. Grayson on direct appeal.

Undersigned counsel certifies that, to the best of their knowledge, no publicly traded company or corporation has any interest in the outcome of this appeal.

Respectfully submitted,

/s/John Anthony Palombi
John Anthony Palombi

*Counsel for Appellant*

C-3 of 3

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT .................................................. 1

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................. 1

STATEMENT OF THE CASE ................................................................................ 1

STANDARD OF REVIEW .................................................................................... 4

SUMMARY OF THE ARGUMENT ...................................................................... 4

ARGUMENT ......................................................................................................... 5

I.     The District Court erred in finding *Baze* inapplicable and concluding conscious suffocation does not violate the Eighth Amendment. .......................................... 5

    A.     Consciously suffocating a prisoner during an execution violates the Eighth Amendment regardless of the mechanism of action. ...................................... 7

    B.     *Baze* establishes a per se prohibition on executions that cause conscious suffocation ........................................................................................................ 8

II.    The District Court abused its discretion in concluding Mr. Grayson did not show a substantial likelihood of success on the merits of either count. ....................... 8

    A.     The Protocol causes prisoners to remain conscious for several minutes after the nitrogen begins flowing ............................................................................. 9

    B.     Each of Mr. Grayson's alternatives significantly reduces the substantial risk of unconstitutional pain caused by the Protocol ........................................... 11

    C.     Mr. Grayson's proposed alternatives are feasible ......................................... 14

CONCLUSION .................................................................................................... 16

CERTIFICATE OF COMPLIANCE ..................................................................... 18

CERTIFICATE OF SERVICE .............................................................................. 19

i

# TABLE OF AUTHORITIES

**Cases**

*Baze v. Rees*, 553 U.S. 35 (2008) ............................................................... 4, 5, 6, 7, 8, 16, 17

*Brant v. Sec'y, Dep't of Corr.,* No. 23-13124, 2024 WL 1187330 (11th Cir. Feb. 29, 2024) ............................................................................................................................. 8

*Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019) ............................. 4

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123 (D.C. Cir. 2020) ........ 10

*Kennedy v. Louisiana*, 554 U.S. 407 (2008) ...................................................................... 16

*Powell v. Thomas*, 641 F.3d 1255 (11th Cir. 2011) ............................................................. 4

**Statutes**

28 U.S.C. § 1292(a)(1) ..................................................................................................... 1

42 U.S.C. § 1983 ............................................................................................................. 2

Ala. Code § 15-18-82.1(b)(2) ........................................................................................... 2

**Other Authorities**

Amer. Veterinary Med. Ass'n, AVMA Guidelines for the Euthanasia of Animals: 2020 Ed. .............................................................................................................................. 13

Miller's Anesthesia (7th ed.) (Ronald D. Miller ed., Churchill Livingstone 2010) ........ 14

**Constitutional Provisions**

U.S. Const. amend. VIII ............................................................ 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 16, 17

## STATEMENT REGARDING ORAL ARGUMENT

Carey Grayson respectfully requests this Court schedule oral argument because it concerns an issue of great importance: whether the District Court's conclusion that suffocating a death-sentenced prisoner while he is conscious does not, by itself, violate the Eighth Amendment.

## JURISDICTIONAL STATEMENT

Mr. Grayson appeals from the United States District Court for the Middle District of Alabama's November 6, 2024, order denying his motion for a preliminary injunction.[1] Mr. Grayson timely appealed on November 6, 2024.[2] This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Does it violate the Eighth Amendment to suffocate a death-sentenced prisoner while he is conscious?

2.    Did Mr. Grayson establish a substantial likelihood of success on the merits of his complaint such that his execution should be enjoined until after a trial on the merits?

## STATEMENT OF THE CASE

In 2018, the Alabama Legislature authorized a novel method of execution:

---

[1] ECF No. 25.

[2] ECF No. 26.

1

nitrogen hypoxia.[3] Despite not having a protocol to review, death-sentenced prisoners were given 30 days from June 1, 2018, to decide whether to die by nitrogen hypoxia or remain subject to lethal injection.[4] Mr. Grayson—just months from trial on a methods of execution challenge to lethal injection[5]—opted out of lethal injection while reserving his right to challenge the nitrogen hypoxia protocol when it was developed.[6]

More than five years later, Defendants announced a protocol for execution by nitrogen hypoxia (Protocol),[7] and sought a warrant to execute Kenneth Smith by nitrogen hypoxia.[8] On January 25, 2024, Mr. Smith became the first person in the world to be executed by a government using nitrogen hypoxia. On September 26, 2024, Alan Miller became the second person so executed.

On June 10, 2024, Attorney General Steve Marshall filed a motion asking the Alabama Supreme Court (ASC) to authorize Defendants Hamm and Raybon to execute Mr. Grayson by nitrogen hypoxia.[9] On June 28, 2024, Mr. Grayson filed a 42 U.S.C. § 1983 action seeking injunctive relief based on claims the Protocol violates the Eighth

---

[3] Ala. Code § 15-18-82.1(b)(2).

[4] *Id.*

[5] Am. Scheduling Order, *In re Alabama Lethal Injection Protocol Litig.*, No. 2:12-cv-0316-WKW (June 5, 2018), ECF No. 424 (setting Sept. 4, 2018, trial date).

[6] ECF Doc. 30-2.

[7] ECF Doc. 30-12. The Protocol released to the public and prisoners is heavily redacted.

[8] ECF Doc. 30-3.

[9] ECF No. 30-4.

2

Amendment.[10] Defendants moved to dismiss.[11]

On August 19, 2024, Defendant Ivey ordered Mr. Grayson to be executed at any point between "12:00 a.m. [Central] on Thursday, November 21, 2024," and "6:00 a.m. [Central] on Friday, November 22, 2024."[12] The next day, Mr. Grayson filed a motion for preliminary injunction (PI Motion).[13]

On October 8 and 9, 2024, the District Court held a hearing on the PI Motion.[14] The parties filed post-hearing briefs,[15] and on November 6, 2024, the District Court dismissed Governor Kay Ivey and Attorney General Steve Marshall as defendants, otherwise denied the motion to dismiss and denied the PI Motion.[16] Mr. Grayson filed a notice of appeal that same day,[17] and this Court granted expedited briefing.

---

[10] ECF No. 1.

[11] ECF No. 19. While Governor Kay Ivey and Attorney General Steve Marshall were also defendants, the District Court dismissed them from the lawsuit for lack of standing. Mr. Grayson does not appeal that decision. Following a motion to dismiss, Mr. Grayson voluntarily dismissed the Alabama Department of Corrections (ADOC) as a defendant. ECF Nos. 17, 18.

[12] ECF No. 30-14. Defendants have announced Mr. Grayson will be executed at 6 p.m. Central on November 21, 2024.

[13] ECF No. 30.

[14] ECF No. 84.

[15] ECF Nos. 92 (Grayson), 94 (Defendants).

[16] ECF No. 95.

[17] ECF No. 97.

**STANDARD OF REVIEW**

This Court reviews the denial of a preliminary injunction for abuse of discretion.[18] It reviews legal conclusions *de novo* and factual findings for clear error.[19]

**SUMMARY OF THE ARGUMENT**

When the oxygen is cut off and nitrogen starts flowing into Mr. Grayson's mask, he will be conscious. If (limited) history is any guide, he will remain conscious for several minutes while receiving no oxygen. This consciousness is agony-inducing, entirely unnecessary to the process, and easily avoidable. Mr. Grayson maintains the Supreme Court has held conscious suffocation during an execution violates the Eighth Amendment,[20] and the District Court erroneously concluded conscious suffocation, without more, is constitutionally permissible.

The District Court also found Mr. Grayson failed to establish a substantial likelihood of success on the merits as required to warrant a preliminary injunction. Central to that conclusion was its erroneous interpretation of *Baze* and the Eighth Amendment and an almost singular focus on the mechanism of action for suffocation. The District Court also made clearly erroneous factual findings concerning the feasibility of Mr. Grayson's proposed alternatives.

---

[18] *See Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011).

[19] *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019).

[20] *Baze v. Rees*, 553 U.S. 35 (2008) (plurality).

This Court should reverse and remand for entry of a preliminary injunction based on either or both arguments. Alternatively, it should reverse and remand for reconsideration of the PI Motion employing the correct interpretation of *Baze* and the Eighth Amendment (and, if necessary, issue a stay to permit the District Court time to reconsider before the suit is mooted by the execution).

## ARGUMENT

### I.    The District Court erred in finding *Baze* inapplicable and concluding conscious suffocation does not violate the Eighth Amendment.

There is no question that after the mask is strapped to Mr. Grayson's face and the breathing air is cut off and nitrogen gas starts flowing, he will remain conscious for an uncertain length of time, at least 40 seconds (in theory) but up to several minutes (in practice—as seen in the executions of Messrs. Smith and Miller). The Supreme Court has held conscious suffocation of a death-sentenced prisoner is cruel and unusual. The District Court rejected this formulation in concluding Mr. Grayson had not established a substantial likelihood of success on the merits. This Court should vacate the District Court's decision and enter an injunction prohibiting Mr. Grayson's execution until Defendants adopt one of his proposed alternatives or a trial on the merits concludes.

In *Baze*, two death-sentenced prisoners challenged Kentucky's three-drug protocol. Kentucky's protocol consisted of the sequential injection of sodium thiopental (an anesthetic), pancuronium bromide (a paralytic) and potassium chloride

(to induce cardiac arrest).[21] Mr. Baze argued that, when administered properly, this method of execution would not violate the Eighth Amendment, Kentucky did not properly administer it, creating a risk of pain beyond that inherent in the method of execution.[22] Specifically, maladministration of the anesthetic could lead to an unconstitutional level of pain from the administration of the second and third drugs.[23] The Court noted:

> It is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride.[24]

Justice Ginsberg's dissent echoed the Eighth Amendment implications when she wrote concerning consciousness tests:

> They are simple and essentially costless to employ, yet work to lower the risk that the inmate will be subjected to the agony of conscious suffocation caused by pancuronium bromide and the searing pain caused by potassium chloride.[25]

The District Court rejected Mr. Grayson's contention that *Baze* applied to this case on that point, and disagreed that *Baze* held conscious suffocation is a per se

---

[21] *Baze*, 553 U.S. at 44.

[22] *Id.* at 41.

[23] *Id.*

[24] *Id.* at 53.

[25] *Id.* at 121 (Ginsberg, J., dissenting).

violation of the Eighth Amendment:

> In his motion, Grayson argues that "the lack of sedation . . .violates *Baze's* prohibition on conscious suffocation." (Doc. 30 at 14) But conscious suffocation as mentioned in *Baze* is discussed in the lethal injection context—specifically Kentucky's lethal injection protocol—and is thus inapplicable to the present case. *Baze*, 553 U.S. at 41, 53. Further, nothing in *Baze* holds that the per se existence of conscious suffocation automatically disqualifies an execution method as being unconstitutional.[26]

The District Court is wrong on both points.

### A. Consciously suffocating a prisoner during an execution violates the Eighth Amendment regardless of the mechanism of action.

The District Court's conclusion that *Baze* does not apply because it concerned a different method is too narrow and leads to illogical results. In *Baze*, the suffocation agent was pancuronium bromide, which paralyzed the diaphragm, preventing the lungs from obtaining oxygen. Here, the suffocation agent is the replacement of breathing air in a mask with pure nitrogen gas, preventing the lungs from obtaining oxygen. Regardless of the mechanism of action, the prisoner is being suffocated. If he is conscious during that suffocation, it violates the Eighth Amendment.

Under the District Court's reading of *Baze*, the Eighth Amendment would permit a state to place a death-sentenced prisoner in a dry-cleaning bag and wait for him to run out of oxygen because the suffocation was not induced via lethal injection. Likewise,

---

[26] ECF No. 95 at 36 n.17.

submerging a death-sentenced prisoner's head in a tub of water until he drowns would be okay because the deprivation of oxygen was not drug-induced. This is illogical and an incorrect reading of *Baze* and the Eighth Amendment.

## B. *Baze* establishes a per se prohibition on executions that cause conscious suffocation.

The language in Chief Justice Roberts' plurality opinion and Justice Ginsberg's dissent—that the Eighth Amendment prohibits executions with a "constitutionally unacceptable risk of suffocation" and "agony of suffocation"—could not be more straightforward. Further, prosecutors have used suffocation as a reason to declare a murder heinous, atrocious and cruel.[27]

The Supreme Court has unequivocally stated that suffocation of a conscious person violates the Constitution. The District Court's erroneous interpretation of *Baze* and the Eighth Amendment requires this Court to vacate, enjoin Mr. Grayson's execution, and remand for the District Court to apply the proper reading of *Baze* in deciding whether to grant a preliminary injunction.

## II.    The District Court abused its discretion in concluding Mr. Grayson did not show a substantial likelihood of success on the merits of either count.

---

[27] *See, e.g., Brant v. Sec'y, Dep't of Corr.,* No. 23-13124, 2024 WL 1187330, at *2 (11th Cir. Feb. 29, 2024), *cert. denied sub nom. Brant v. Dixon,* No. 24-5308, 2024 WL 4655023 (U.S. Nov. 4, 2024); *see also* ECF No. 84-17 at 5 (describing the victim's death by suffocation as, *inter alia*, "*unnecessarily* torturous") (emphasis added; citation and internal quotation marks omitted).

The District Court concluded Mr. Grayson's evidence was speculative, and he did not establish a substantial likelihood of success because (1) he did not show a constitutionally impermissible level of pain, and (2) his alternatives were not feasible.[28] Neither conclusion is supportable.

### A. The Protocol causes prisoners to remain conscious for several minutes after the nitrogen begins flowing.

Before the execution of Kenneth Smith, Defendants Hamm and Raybon represented to the District Court their Protocol would "cause unconsciousness within seconds" of nitrogen flowing into the mask.[29] They have twice been proven wrong. An examination of the evidence presented at the hearing shows the District Court's conclusion that it was all speculative is incorrect.

Brandon McKenzie has been the ADOC's execution team captain at "six to eight" executions, including the nitrogen hypoxia executions of Messrs. Smith and Miller, as well as the unsuccessful attempts to execute them by lethal injection.[30] Captain McKenzie is responsible for consciousness checks during both lethal injection and nitrogen hypoxia executions. According to Captain McKenzie, Mr. Smith was conscious for "a few minutes" or "several minutes or so" and for what "seemed like a

---

[28] ECF No. 95 at 44.

[29] ECF No. 87 at 52:14-53:2.

[30] *Id.* at 143:1-144:7.

while" *after* the nitrogen began to flow.[31]

Captain McKenzie's testimony about when Mr. Miller lost consciousness was limited to his observation that, "after about six minutes," he "appeared unconscious" or "to be deceased."[32] Bolstering Captain McKenzie's testimony are various witnesses' accounts of movement and breathing issues exhibited by both men.[33] Further, Defendants' own expert testified, "If it [nitrogen] was given slowly and someone was slowly developing hypoxia, there could be suffering[.]"[34]

Subjecting a conscious person to several minutes of oxygen deprivation is constitutionally impermissible.[35] While witness' interpretations differ, with Defendant Hamm and other defense witnesses characterizing the movements as involuntary and the gasping as "agonal breathing," descriptions of physical movements generally matched up.[36] However, it is unlikely "a lay person without medical training" could

---

[31] *Id.* at 146:14-147:9, 156:17-157:2.

[32] *Id.* at 151:1-12.

[33] *See*, *e.g.*, ECF No. 79-1 (statements of media witnesses).

[34] ECF No. 88 at 98:25-99:1.

[35] *See*, *e.g.*, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 132 (D.C. Cir. 2020) (complaint adequately pled an Eighth Amendment claim by alleging pulmonary edema was likely to develop while the prisoner was conscious, which "causes extreme pain, terror and panic," because "not being able to breathe during drowning or asphyxiation is one of the most powerful, excruciating feelings known to humans").

[36] *See*, *e.g.*, ECF No. 87 at 89:10-22 (Defendant Hamm describing movements of both Messrs. Smith and Miller as "involuntary" and disagreeing "with the news accounts that Miller was gasping for breath" as opposed to experiencing agonal breathing).

"easily distinguish between agonal breathing versus consciously gasping for air against an upper airway constriction[.]"[37] Further, Defendant Hamm, who has witnessed "15 or 16" executions,[38] has never seen anyone executed by lethal injection "struggle against the restraints."[39]

Even if only Captain McKenzie's consciousness testimony is credited, the failure to sedate Mr. Grayson before killing him by nitrogen hypoxia—when it will inevitably include conscious suffocation for upward of several minutes—creates a substantial risk of significant and unnecessary suffering in violation of the Eighth Amendment.

### B. Each of Mr. Grayson's alternatives significantly reduces the substantial risk of unconstitutional pain caused by the Protocol.

The evidence supporting Mr. Grayson's Eighth Amendment claim and proposed alternatives was not speculative. Far from it. It included testimony from Defendants' own medical expert, anesthesiologist Joseph Antognini, M.D., who regularly testifies for defendants and against prisoners challenging three-drug lethal injection protocols like Alabama's.[40] According to Dr. Antognini:

- ■ "[A] person given 500 milligrams of midazolam" intravenously "would be rendered completely unconscious and insensate to pain and [noxious]

---

[37] *Id.* at 183:18-21.

[38] *Id.* at 91:10-12.

[39] *Id.* at 92:2-5.

[40] ECF No. 88 at 84:25, 86:13.

stimuli."[41]

- Because the second drug paralyzes the muscles, including the diaphragm, "if you were to inject someone with" it "without the midazolam dose first, they would feel the sensation of not being able to breathe."[42]

- Five hundred milligrams of midazolam would prevent a prisoner from sensing pulmonary edema, and in fact, "midazolam is considered by some to be a treatment to relieve the anxiety produced by pulmonary edema[.]"[43] "[T]he first drug, midazolam, is intended to prevent that feeling from occurring[.]"[44]

- Sounds described by witnesses to a Tennessee execution involving midazolam—"gurgling, snoring, gasping," and "high pitched ahs"—were "totally consistent with someone who is breathing through an obstructed airway."[45] That was not a concern, however, "[b]ecause," given "the midazolam dose, any such obstructed breathing would not be painful."[46]

Thus, Defendants' own expert witness established the inability to breathe due to a

---

[41] *Id.* at 86:2:9.

[42] *Id.* at 86:14-87:1.

[43] *Id.* at 91:16-92:9; 89:12-14.

[44] *Id.* at 87:2-4.

[45] *Id.* at 95:11-24.

[46] *Id.* at 95:25-96:4.

paralytic and breathing through an obstructed airway—during an execution no less—
without sedation would be painful.[47]

Mr. Grayson's medical expert, anesthesiologist Brian McAlary, M.D., opined
repeatedly, including "with reasonable medical probability," Mr. Smith suffered
negative pressure pulmonary edema (NPPE) caused by an obstructed airway.[48] NPPE
occurs when a person attempts to breathe through or against an airway obstruction,
resulting in pressure in the lungs sufficient to cause fluid from the bloodstream to be
drawn into the lungs.[49]

In Mr. Smith's case, the obstruction resulted from a laryngospasm caused by the
high level of anxiety and stress resulting from awareness of impending suffocation
and/or the high flow rate of nitrogen in the Protocol.[50] "Within a second or two" of an
airway obstruction, the person would begin to "tak[e] forced inspiratory efforts to try
to overcome that choking sensation."[51] "[I]n the case of a severe effort to overcome
airway problems, it usually is going to take anywhere from three to five minutes before

---

[47] Moreover, euthanizing non-avian animals via inert gas hypoxia "is unacceptable for
other [non-pig] mammals" unless "they are rendered unconscious via an acceptable
method[.]" ECF No. 91-2 (Amer. Veterinary Med. Ass'n, AVMA Guidelines for the
Euthanasia of Animals: 2020 Ed.) at 28; *id.* at 22.

[48] *See, e.g.*, ECF No. 87 at 209:11-210:2, 216:21-217:2.

[49] *See, e.g.*, ECF No. 88 at 56:8-23.

[50] *See, e.g., id.* at 23:2-8.

[51] ECF No. 87 at 179:11-13.

you start breaking down the lung enough to get significant pulmonary edema."[52] This three-to-five-minute range aligns with Captain McKenzie's estimate of how long Mr. Smith (and Mr. Miller[53]) remained conscious after nitrogen began flowing.

NPPE cannot occur in a person who is unconscious because an unconscious person "does not generate enough sucking effect, trying to get air into the lung, to be able to create the force to pull the fluid in."[54] Therefore, "[a]t least the majority of" the pulmonary edema Mr. Smith experienced occurred "during the period of time while he was conscious[.]"[55] The obstruction leading to NPPE—and awareness of suffocation— can be prevented by sedating the prisoner before beginning the nitrogen flow.[56] The intramuscular dose of ketamine proposed in Mr. Grayson's first alternative—4 mg/kg[57]—alone is at the upper limit to sedate, and at the lower limit to induce, general anesthesia.[58] "Lower doses are used [to induce general anesthesia] if adjuvant drugs such as midazolam or thiopental are also given."[59]

### C. Mr. Grayson's proposed alternatives are feasible.

---

[52] *Id.* at 179:14-21.

[53] Mr. Miller's autopsy is not yet available.

[54] ECF No. 87 at 178:1-5.

[55] *Id.* at 178:6-9.

[56] *Id.* at 192:23-193:12; ECF No. 30-9 at ¶¶ 12-13.

[57] ECF No. 42 at ¶ 86.

[58] ECF No. 91-1 at 4 (Miller's Anesthesia (7th ed.) (Ronald D. Miller ed., Churchill Livingstone 2010), at 746 (Table 26-9)).

[59] *Id.*

ADOC can get the drugs, and has the equipment and personnel, necessary to implement Mr. Grayson's two proposed alternatives, each of which would significantly reduce the likelihood Mr. Grayson will experience conscious suffocation. First, ADOC obtains the drugs it uses in lethal injection executions, including midazolam (a controlled substance), from a licensed pharmacist.[60] And while Defendants have refused to "[e]xplain the procedures and policies by which ADOC obtains the drugs used in lethal injection executions,"[61] ketamine is available for use in executions in at least two states,[62] while fentanyl is available in three.[63] Since the IV team participates in nitrogen hypoxia executions,[64] and can perform an intramuscular injection as called for in both of Mr. Grayson's alternatives,[65] ADOC has the personnel and equipment to implement Mr. Grayson's alternatives.

---

[60] ECF No. 87 at 73:2-11.

[61] Defs.' Resp. to Pl.'s Interrogatory No. 7 ("Defendants object to this interrogatory because it seeks information that is not relevant to the claims or defenses of either party, thus it is overbroad," but offering "to confer with Plaintiff on this matter if Plaintiff believes that he can establish the relevance of the requested information to the amended complaint."). This is consistent with ADOC's assertion that execution related purchases are exempt from the Open Records Act. ECF No. 87 at 72:10. This secrecy has been successful, with ADOC using midazolam in executions 19 times, most recently just last month.

[62] ECF Nos. 91-3 (Nevada), 91-4 (Utah).

[63] ECF Nos. 91-3 (Nevada), 91-4 (Utah), 91-5 (Nebraska).

[64] *Id.* at 101:25-102:4.

[65] *Id.* at 100:18-101:10.

The protections of the Eighth Amendment are the same in Alabama as in any other State.[66] Thus, Defendants cannot rely on their own ineptitude or inaction to claim Mr. Grayson's proposed alternatives are not feasible. Defendants' access to drugs (or ability to get them, as demonstrated by Nebraska, Nevada, and Utah) and personnel capable of giving intramuscular injections make Mr. Grayson's alternatives feasible.

Contrary to the District Court's conclusion, this is not a "battle of the experts," and Mr. Grayson's evidence is not "speculative." The main "battle of the experts" was whether Mr. Smith suffered from NPPE. However, regardless of the mechanism of action for the conscious suffocation—NPPE caused by an airway obstruction or suffocation due to breathing air being cut off and replaced with nitrogen gas—the evidence shows Mr. Smith (and Mr. Miller) remained conscious for minutes after their breathing air was cut off. Neither is constitutionally acceptable, and the District Court's misinterpretation of *Baze* and the Eighth Amendment caused it to abuse its discretion in denying the preliminary injunction.

## CONCLUSION

The District Court concluded, contrary to Supreme Court precedent, that suffocating a conscious prisoner does not, without more, violate the Eighth

---

[66] *See, e.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 412 (2008) ("the separate States are bound by the proscriptive mandates of the Eighth Amendment . . . and all persons within those respective jurisdictions may invoke its protection.").

16

Amendment. This Court should vacate the District Court's order and remand the case for entry of an injunction against Mr. Grayson's execution until a trial on the merits is complete. In the alternative, this Court should remand for the District Court to reconsider the motion for preliminary injunction under the correct reading of *Baze*.

Respectfully submitted,

/s/John Anthony Palombi
John Anthony Palombi
John_Palombi@fd.org

/s/Spencer J. Hahn
Spencer J. Hahn
Spencer_Hahn@fd.org

/s/Eric Brown
Eric Brown
Eric_Brown@fd.org

/s/Kacey L. Keeton
Kacey Leigh Keeton
Kacey_Keeton@fd.org

/s/Matt D. Schulz
Matt D. Schulz
Matt_Schulz@fd.org

Federal Defenders for the
Middle District of Alabama
817 S. Court Street
Montgomery, Alabama 36104
(334) 834-2099

*Counsel for Carey Grayson*

17

**CERTIFICATE OF COMPLIANCE**

I certify this document follows the word limit requirements of the Federal Rule of Appellate Procedure 32(g) because it consists of 3,534, as calculated by a word processing program.

This document follows the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

/s/ John A. Palombi
John A. Palombi

## CERTIFICATE OF SERVICE

I certify that, on November 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ John A. Palombi
John A. Palombi